UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONALD G. KARR, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01973-JPH-TAB |
| | ) | |
| KEITH BUTTS, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Donald Karr was convicted of rape and domestic battery after a trial in Indiana state court.

His petition for a writ of habeas corpus asserts a claim for ineffective assistance of trial counsel

and a *Brady* violation. While Mr. Karr concedes that his *Brady* claim and part of his ineffective

assistance claim are procedurally defaulted, he contends that they should be allowed to proceed

because the procedural default was caused by the ineffective assistance of his counsel at post-trial

and post-conviction proceedings. But because Mr. Karr has not demonstrated that post-trial

counsel was ineffective, and because his non-defaulted claims do not entitle him to relief, the

amended petition for a writ of habeas corpus must be **DENIED**.[1]

---

[1] The respondent did not file a copy of Mr. Karr's Brief of Appellant, the State's Brief of Appellee, Mr. Karr's Reply, or the State's response in opposition to Mr. Karr's petition to transfer, which were filed on direct appeal of Mr. Karr's conviction and sentence in state court. *See* Rule 5(d) of the Rules Governing Section 2254 Cases in the United States District Courts (respondent must file all state court appellate briefs with the answer of the petition). In the interest of judicial economy, the Court takes judicial notice of these appellate briefs, which are publicly available on the Indiana Court of Appeals website. *See* https://public.courts.in.gov, Case Number 29A02-1707-CR-01502.

# I.
# BACKGROUND

Mr. Karr was convicted of two counts of rape, a Level 3 felony, and one count of domestic battery, a Level 6 felony, against his live-in girlfriend, A.P., in Indiana Criminal Case No. 29D03-1505-F6-4047. Dkt. 12-7, pp. 110-12.

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1).

## A.  Trial Evidence

On May 5, 2015, Mr. Karr came home and accused A.P. of having another man in the house. Dkt. 12-2, p. 37. He berated A.P., smacked her across the face and head, grabbed her by the hair, and threw her onto the floor. *Id.* at 37-39. When one of A.P.'s three children came out of her bedroom and asked to go to the bathroom, Mr. Karr told the child to go back to bed. *Id.* at 39-40. Mr. Karr told A.P. that she would have to perform oral sex on him, unbuckled his pants, and approached her. *Id.* at 40. A.P. kicked him away but then almost immediately began to experience abdominal pain from a preexisting ovarian cyst. *Id.* at 40-41.

Mr. Karr initially refused but later agreed to let A.P. call her doctor or go to the emergency room. *Id.* at 41. At A.P.'s request, they dropped her children off at her parents' house. *Id.* at 42. A.P. did not tell her parents that Mr. Karr had beaten her. *Id.* Later, when Mr. Karr was out of earshot, A.P. told an emergency room nurse, "I need you to get a police officer because he's hitting me." *Id.* at 43–44. A.P. spoke to a police officer in private and showed him a clump of hair that she claimed Mr. Karr had ripped from her scalp. *Id.* at 46-48. The officer told A.P. that he could not make an arrest that night because she did not have any visible bleeding or bruising. *Id.* at 48.

He offered to drive her home and tell Mr. Karr to go elsewhere for the night, but she declined. *Id.* Instead, A.P. received treatment for her ovarian cyst and went home with Mr. Karr. *Id.* at 48-50. Her children spent the night at her parents' house. *Id.* at 49-50.

When they got home, Mr. Karr resumed his physical and verbal abuse. *Id.* at 50-51. He smacked A.P. across the face, ordered her to perform oral sex, and forced himself into her mouth. *Id.* at 51-52. At one point he stopped and "lectured" her for several hours about the rules she needed to follow. *Id.* at 52-53. When they went to bed, Mr. Karr began looking for a pornographic video on his cell phone. *Id.* at 53-54. He told A.P. to put her hand on his penis, and she complied because "every time I told him no[,] I was either hit or forced to do something anyway[.]" *Id.* at 54. He later asked her to perform oral sex, which she did "[o]ut of fear of what would happen if [she] said no." *Id.* During this time, she saw a light behind her; she turned her head and saw it was his cell phone, and she "assumed he was taking a video." *Id.* at 55. Mr. Karr ejaculated on A.P., and they both fell asleep. *Id.* at 55.

The next morning, A.P. showered and went to her doctor's appointment. *Id.* at 56. Her doctor asked to know what had happened the night before with Mr. Karr. *Id.* at 57. A different police officer was called and drafted a probable cause affidavit for Mr. Karr's arrest. *Id.* at 57-59. A.P. underwent a forensic exam that revealed petechiae—small red dots indicative of burst blood—in the roof of her mouth. *Id.* at 60, 191. A forensic nurse later testified that these blood bursts could have resulted from oral sex. *Id.* at 192. A.P. also had tenderness and redness around her jaw, tenderness and redness on her scalp, and a cut on the inside of her lip. *Id.* at 191.

Mr. Karr was arrested later that day and charged with rape, domestic battery, strangulation, and intimidation. *Id.* at 132. Trial counsel's theory of defense was fabrication—that A.P. fabricated a story of domestic violence to get Mr. Karr out of her home and out of her life. When her initial

fabrication of domestic battery failed, she doubled down and fabricated an even more heinous story of sexual assault. *Id.* at 29-30. The trial court entered a directed verdict of not guilty as to intimidation. *Id.* at 243. The jury ultimately found Mr. Karr guilty on two counts of rape and one count of domestic battery. Dkt. 12-3 at 71.

### B. Post-Trial Proceedings

Following the jury trial but before sentencing, trial counsel filed a motion to withdraw, and a new attorney, Jane Ruemmele, entered her appearance. *Id.* at 80; dkt. 12-7, p. 2.

On September 1, 2016, Ms. Ruemmele filed a motion for an appeal bond, which was denied. Dkt. 12-3, p. 84. She also filed a motion for a new trial, claiming that Mr. Karr had received ineffective assistance of trial counsel. Dkt. 12-7, pp. 3-6. The motion argued, among other things, that trial counsel was ineffective for (1) failing to investigate A.P.'s prescription medication use; (2) failing to investigate A.P.'s emergency room records; (3) failing to present evidence that A.P. sent Mr. Karr a text message about filling a hydrocodone prescription; (4) failing to present evidence that A.P. sent Mr. Karr a text message about receiving intravenous anesthesia in the emergency room; (5) failing to present evidence from the forensic analysis of Mr. Karr's cell phone that suggested he did not access a pornographic video during the second rape; and (6) failing to present evidence from the forensic analysis of Mr. Karr's cell phone that suggested he did not record a video or take pictures of A.P. during the second rape.[2] *Id.*

At a hearing on the motion for a new trial, trial counsel testified that he did not fully investigate A.P.'s prescriptions because he did not know how to admit her prescriptions into evidence without calling Mr. Karr as a witness. *Id.* at 97. He also testified that he did not investigate A.P.'s records from the emergency room because he did not believe it would "show that [the sexual

---

[2] Ms. Ruemmele raised additional grounds in her motion for a new trial which Mr. Karr has since abandoned.

4

assaults] didn't happen." Dkt. 12-3 at 97. Ms. Ruemmele then asked the court to continue the hearing so she could have an opportunity to present additional evidence. *Id.* at 100. The court provided Ms. Ruemmele with an audio recording of the trial but did not provide a transcript. *Id.* at 105, 147.

A second hearing on the motion for a new trial was held on September 19, 2016. Ms. Ruemmele called four witnesses and entered eight exhibits into evidence. A.P. testified that she was being prescribed hydrocodone at the time of the assault. Dkt. 12-3, p. 120. A pharmacy receipt established that she had picked up hydrocodone from the pharmacy on May 5, 2015. Dkt. 12-4, p. 119. A.P. did not recall whether she had taken hydrocodone that night before the battery or the sexual assaults. *Id.* at 120. In a text message, A.P. indicated that she "got an IV for meds" at the hospital and was feeling much better. Dkt. 12-3, p. 124. Although A.P. could not recall at the post-trial hearing whether she received intravenous medication at the emergency room, *see id.*, her medical records indicate that she received an intravenous injection of promethazine during her inpatient care on May 6, 2015.[3] Dkt. 12-4, p. 121-22.

Ms. Ruemmele also called Officer Matt McGovern of the Noblesville Police Department, who conducted a forensic examination of Mr. Karr's cell phone. Officer McGovern testified that the forensic analysis did not reveal that Mr. Karr accessed a pornographic video or recorded a video of A.P. before or during the second sexual assault. Dkt. 12-3, p. 139. He testified that in some cases a forensic exam may uncover cell phone data that has been deleted, but he could not exclude the possibility that the forensic analysis excluded relevant recordings that had been deleted. *Id.* at 141.

---

[3] Promethazine is a central nervous system depressant. Side effects include sedation, confusion, disorientation, nightmares, delirium, and hallucinations. These side effects may be exacerbated when the medication is taken with other central nervous system depressants, such as hydrocodone. *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2004/07935s030lbl.pdf (last visited July 26, 2021).

Following the presentation of evidence, Ms. Ruemmele argued that Mr. Karr had received ineffective assistance of trial counsel and was entitled to a new trial because the evidence that A.P. may have been under the influence of medication, and the evidence that Mr. Karr did not access pornographic videos on his cell phone or record a cell phone video of A.P., could have been used to impeach A.P.'s recollection of events. *Id.* at 151-59. The court denied the motion for a new trial. *Id.* at 160; dkt. 12-7, p. 7.

The court sentenced Mr. Karr on November 4, 2016. On the two rape convictions, Mr. Karr received concurrent 10-year sentences at the Indiana Department of Correction (IDOC) followed by 5-year suspended sentences and probation. Dkt. 12-7, pp. 110-12. On the domestic battery conviction, Mr. Karr received a 2.5-year sentence at IDOC, consecutive to his sentences for rape. *Id.*

### C. Direct Appeal and Post-Conviction Proceedings

Ms. Ruemmele continued to represent Mr. Karr on direct appeal. She filed a *Davis-Hatton* petition in the Indiana Court of Appeals seeking to stay the direct appeal and return to the trial court to file a petition for post-conviction relief.[4] Dkt. 12-8, p. 8. The Court of Appeals granted the petition. *Id.* Ms. Ruemmele raised the same ineffective assistance of counsel allegations in the petition for post-conviction relief as she raised in her motion for a new trial. Dkt. 12-8, pp. 24-27.

---

[4] In Indiana courts, ineffective assistance of trial counsel is ordinarily raised in collateral proceedings following direct appeal. An exception to this practice, the *Davis-Hatton* procedure, permits appellants to file a petition with the Indiana Court of Appeals to stay or dismiss the direct appeal without prejudice and allow the defendant to return to the trial court for post-conviction proceedings. If the trial court denies the petition for post-conviction relief, the defendant may raise direct appeal issues and collateral review issues in the same appellate proceeding. *See* dkt. 11-2, p. 2 n. 3 (citing *Talley v. State*, 51 N.E.3d 300, 302 (Ind. Ct. App. 2016); Ind. Appellate Rule 37(A)).

The trial court denied the petition for post-conviction relief, reasoning that the denial of the ineffective assistance of trial counsel claim in the motion for a new trial precluded Mr. Karr from relitigating the issue in a petition for post-conviction relief. *Id.* at 129-132.

Following the denial of post-conviction relief, Mr. Karr returned to the Indiana Court of Appeals. He appealed the denial of his motion for a new trial and the summary denial of his petition for post-conviction relief in the same appellate proceeding.

In his state appellate briefs, Mr. Karr repeatedly argued that A.P. may have received intravenous "anesthesia" at the emergency room. *See* Brief of Appellant, pp. 14, 19, 20, 28, 29, 33, 34, 37, 43; Reply Brief, pp. 10, 12; Petition to Transfer, pp. 7, 8. He did not refer to the injection of promethazine A.P. received and did not provide a citation to A.P.'s hospital records, even though these records had been admitted at the post-trial hearing. *See* dkt. 12-4, p. 121-22. The only evidence that Mr. Karr referred to in his appellate briefs to support the proposition that A.P. may have received intravenous medication at the emergency room was a text message she had sent stating that she received an "IV for meds so I'm feeling much better." *E.g.* Brief of Appellant, pp. 14, 19, 34 (citing Tr. Vol. III, p. 124).

The court affirmed the trial court in all respects. *See generally* dkt. 9-5.

Regarding the petition for post-conviction relief, the Indiana Court of Appeals reasoned that under Indiana law, a defendant who raises ineffective assistance of trial counsel in a post-trial motion is precluded from raising ineffective assistance of trial counsel in a petition for post-conviction relief. *Id.* at 30-34.

Regarding the motion for a new trial, the Indiana Court of Appeals held that trial counsel was not deficient for failing to investigate A.P.'s prescription records or emergency room records because he made the "tactical" decision to devote his time elsewhere. Dkt. 9-5, p. 26, 28. The court

7

also reasoned that Mr. Karr was not prejudiced by this failure because "A.P.'s testimony was clear and detailed, and there was no evidence that she did not remember the events in question," and because any inconsistencies in her testimony did not "undermine [A.P.'s] account of the incidents." *Id.* at 27, 29. Further, the court held there was no evidence that A.P. received "anesthesia" at the emergency room. *Id.* at 27. The only evidence that she received intravenous medication of any kind, the court reasoned, was her text message about receiving an "IV for meds," but the weight of that evidence was diminished by A.P.'s testimony at the post-trial hearing, where she also stated, "I'm not sure whether I actually received IV medications or if I just told him that." *Id.* at 28.

Mr. Karr also claimed that his trial attorney was ineffective by failing to present to the jury evidence that Officer McGovern conducted a forensic analysis of Mr. Karr's phone, but did not find any evidence that Mr. Karr had accessed pornographic videos, as A.P. had stated in her testimony, or that Mr. Karr had photographed or videotaped A.P. as she suspected. Dkt. 9-5 at 28-29. Mr. Karr argued that this evidence "showed that A.P.'s story could not be corroborated." *Id.* at 29. The Indiana Court of Appeals disagreed, explaining that the injuries noted by the nurse were consistent with the reports A.P. made to police. In addition, the court of appeals stated that Mr. Karr was not prejudiced by his trial counsel's failure to present the cell phone evidence because even if "the jury was persuaded that A.P. was incorrect when she said that Karr was viewing pornography and recording her acts with his cell phone, such evidence would not necessarily undermine her account of the incidents." *Id.*

### D.  Federal Proceedings

In this case, Mr. Karr raises the same grounds for ineffective assistance of trial counsel that were raised in Indiana state courts as well as additional grounds for ineffective assistance of trial counsel that have not been presented to any Indiana state court. Mr. Karr concedes that these

additional grounds are procedurally defaulted, but he argues the default was caused by the ineffective assistance of his post-trial counsel, Ms. Ruemmele, and therefore fall under the *Martinez-Trevino* exception to the rule of procedural default. Mr. Karr specifically argues that Ms. Ruemmele was ineffective for raising ineffective assistance of trial counsel in a post-trial motion and in a *Davis-Hatton* petition rather than waiting to file a petition for post-conviction relief following direct appeal. Mr. Karr argues that he is entitled to explore these grounds for relief at an evidentiary hearing.

## II.
## LEGAL STANDARD

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule,

10

the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

## III.
## DISCUSSION

Mr. Karr is represented in this action by retained habeas counsel. In the amended habeas petition and accompanying memorandum of law, Mr. Karr raises ineffective assistance of trial counsel allegations that were also raised by Ms. Ruemmele in the post-trial motion for a new trial. *Compare supra* at 4 *with* dkt. 9 (amended petition) *and* dkt. 9-1 (brief in support of amended petition). These allegations—which were presented through a complete round of state court review and are fully exhausted—include trial counsel's failure to use exculpatory cell phone evidence and failure to investigate A.P.'s pharmacy and emergency room records. *Id.*

Mr. Karr also raises issues that were never presented in state court. These ineffective assistance of counsel allegations are procedurally defaulted. He argues that the Court should consider the defaulted allegations under the *Martinez-Trevino* exception.

### A. Procedurally Defaulted Claims

The Constitution does not guarantee the right to counsel in state post-conviction proceedings, and an error by post-conviction counsel ordinarily does not excuse procedural default. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). A narrow, "equitable . . . qualification" to this rule applies when state law requires prisoners to raise claims of ineffective assistance of trial counsel "in an initial-review collateral proceeding," rather than on direct appeal. *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012). But the defaulted claims must have "some merit." *Id.* Also, the exception only applies to claims for ineffective assistance of trial counsel, not other constitutional claims. *See id.*; *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). Indiana prisoners may avail

themselves of the *Martinez-Trevino* exception where these conditions are met. *Brown v. Brown*, 847 F.3d 502, 513 (2017).

But before digging into whether the procedurally defaulted claims can be considered, the Court notes that the underlying allegations are not supported by citations to relevant facts in the record or cogent legal argument. The Court will set forth the defaulted allegations and add some context from the record before turning to the arguments about default.

### 1. Purported *Brady* Violations

The first set of defaulted allegations is presented under the heading "**Brady violation: Destroyed Evidence.**" Dkt. 9-1, p. 17; *see Brady v. Maryland*, 373 U.S. 83, 87 (1963) (prosecution's suppression of material favorable evidence violates due process). This section focuses on the clump of hair that Mr. Karr pulled out of A.P.'s head prior to the emergency room visit and subsequent sexual assaults. A.P. showed this clump of hair to the police officer in the emergency room when she reported Mr. Karr's domestic batteries. Mr. Karr states that the police destroyed the clump of hair. He does not explain how the clump of hair was exculpatory.

At trial, a picture of the clump of hair was admitted into evidence. *See* dkt. 12-4, p. 11. Regarding the admission of this photograph, Mr. Karr argues that "[trial] [c]ounsel was ineffective for failing to object to the introduction of the hair sample as there was no corpus deliciti [*sic*] of the crime." *Id.* But Mr. Karr does not explain how an objection to the picture based on a theory that there is no concrete evidence that a crime was committed would have had merit. The hair itself was some evidence that Mr. Karr committed domestic battery against A.P.

Next, under the same *Brady* heading, Mr. Karr raises a Fourteenth Amendment sufficiency of the evidence argument. He states that "[t]he hair sample photo alone is constitutionally insufficient to allow a reasonable trier of fact to establish every element of **capital murder** – mens

rea, actus reus, and causation – beyond a reasonable doubt." *Id.* at 19 (emphasis added). Mr. Karr was not convicted of capital murder—he was convicted of rape and domestic battery. Further, there was plenty of additional evidence that he committed these crimes, such as A.P.'s testimony that Mr. Karr raped and battered her and the forensic nurse's testimony describing A.P.'s physical injuries, which she opined were consistent with oral rape. Similarly, Mr. Karr argues that his convictions should be vacated based on insufficient evidence because "the Supreme Court requires a conviction to rest on more than the uncorroborated confession of the defendant." *Id.* (citing *Opper v. United States*, 348 U.S. 84 (1954)). But Mr. Karr did not confess to these crimes, so the rule in *Opper* is does not apply.

In short, Mr. Karr raises a defaulted *Brady* claim and defaulted sufficiency of the evidence claims. Dkt. 9-1, pp. 17-20.  These claims may not proceed under the *Martinez-Trevino* exception because the exception only applies to procedurally defaulted claims for ineffective assistance of trial counsel. *Davila*, 137 S. Ct. at 2065.

### 2. Defaulted ineffective assistance of trial counsel allegations

Mr. Karr presents six defaulted ineffective assistance of trial counsel allegations.

First, he argues that "[t]rial counsel failed to object to the improper jury instruction, where the jury instruction failed to state that witness credibility may be impeached by prior inconsistent statements." Dkt. 9-1, p. 20. Mr. Karr does not identify which jury instruction he is talking about, nor does he elaborate on why the failure to object amounts to ineffective assistance.

Second, Mr. Karr argues that "[t]rial counsel failed to impeach a witness foundational to the prosecution's case, Nokia Bowens, who was a healthcare provider that treated A.P. after the alleged incident that gave rise to Defendant-Petitioner's original conviction." *Id.* He does not state how trial counsel should have impeached this witness.

13

Third, Mr. Karr argues that "[t]rial counsel failed to order DNA testing of certain hair specimens used as proof the alleged victim A.P. had her hair pulled by the Defendant-Petitioner." *Id.* He does not explain how a DNA test of the hair would have aided Mr. Karr's defense—he never disputed that the hair was A.P.'s. Also, the petition alleges that the hair was destroyed by the police, so it is not clear how trial counsel could have ordered DNA testing of the hair. At trial, only a photo of the hair was admitted into evidence. *See* dkt. 12-4, p. 2.

Fourth, Mr. Karr argues that "[t]rial counsel failed to object to a violation of the Defendant-Petitioner's protection from double jeopardy under the Indiana Constitution." Dkt. 9-1, p. 20. He does not explain the basis for this alleged double jeopardy violation.

Fifth, Mr. Karr argues that "[t]rial counsel failed to object to the State of Indiana's unconstitutionally vague jury charge." *Id.* at 21. He does not identify this jury charge or explain how it was unconstitutionally vague.

Sixth, Mr. Karr argues that "[t]rial counsel failed to object to improper hearsay included in the jury charge concerning the testimony of Amy Summerfield." *Id.* He does not identify the allegedly improper hearsay. Amy Summerfield did not testify in these proceedings. Indeed, the name "Amy Summerfield" does not appear anywhere in the transcript for the state court proceedings.

To determine whether any of these procedurally defaulted ineffective assistance of trial claims have "some merit," courts are guided by the two-prong approach set forth in *Strickland* and its progeny. *Brown*, 847 F.3d at 515. To avoid procedural default, the petitioner must make a "substantial showing" of trial counsel's deficient performance and the prejudice petitioner suffered because of this deficient performance. *Id.* "Substantiality is a threshold inquiry; full consideration of the merits is not required." *Id.*

The defaulted ineffective assistance of counsel allegations do not meet this threshold standard. The allegation that trial counsel was ineffective for failing to raise a corpus delicti objection to the admission of a photograph is plainly meritless, as the rule of corpus delicti concerns the admissibility of extrajudicial confessions and not photographs. *See Winfield v. Dorethy*, 956 F.3d 442, 457 (7th Cir. 2020); *see also Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017) ("The purpose of the corpus delicti rule is to prevent the admission of a confession to a crime which never occurred."). Further, A.P.'s testimony that Mr. Karr raped and battered her was evidence that the crimes occurred.

Mr. Karr devotes only a single sentence to each of the remaining defaulted ineffective assistance allegations. None of these allegations are supported by a citation to the record or controlling legal authority. Mr. Karr argues that trial counsel was ineffective for failing to object to a jury instruction, but he fails to identify the instruction. He argues that trial counsel was ineffective for failing to impeach a witness, but he does not describe how the witness should have been impeached. He argues that trial counsel was ineffective for failing to order DNA testing of hair, but he fails to explain how the DNA test would have benefited his defense. He argues that trial counsel was ineffective for failing to raise a double jeopardy objection, but he does not explain the basis for this double jeopardy objection. He argues that trial counsel was ineffective for failing to object to an unconstitutionally vague jury charge, but he does not identify the jury charge or explain how it was unconstitutionally vague. Finally, he argues that trial counsel was ineffective for failing to object to improper hearsay from a person, Amy Summerfield, whose name does not appear in the transcript.

To be sure, a substantial showing does not require proof of success on the merits. But the defaulted ineffective assistance of trial counsel allegations that Mr. Karr seeks to advance are

wholly undeveloped and, in some cases, divorced from any legal authority or support in the record. In the absence of allegations with "some merit," the *Martinez-Trevino* exception to procedural default does not apply. *Martinez*, 566 U.S. at 16-17. And under these circumstances, Mr. Karr cannot show that he received ineffective assistance of counsel from Ms. Ruemmele that deprived him of the opportunity to raise these meritless allegations.

Mr. Karr also argues that by alleging ineffective assistance of trial counsel in a post-judgment motion and in a *Davis-Hatton* petition, Ms. Ruemmele precluded him from further expanding the record or raising additional ineffective assistance of counsel allegations in state court. Dkt. 9-1, pp. 9-15. Again, Ms. Ruemmele is not ineffective for failing to raise meritless allegations regardless of the procedural posture of the case. Thus, assuming *arguendo* that Ms. Ruemmele should have waited until after the direct appeal to raise ineffective assistance of trial counsel, Mr. Karr has not shown that he was prejudiced by this error.

Accordingly, the procedurally defaulted claims may not proceed under the *Martinez-Trevino* exception, and Mr. Karr's request for relief on these grounds is **DENIED**.

### B. Remaining Claims

Mr. Karr's remaining claims are: (1) whether trial counsel was ineffective for failing to investigate A.P.'s pharmacy and emergency room records; and (2) whether trial counsel was ineffective for failing to present exculpatory cell phone evidence.

For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must show (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Strickland*, 466 U.S. at 687. With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

"[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694). A petitioner who raises ineffective assistance of counsel must overcome a "strong presumption that counsel was effective." *U.S. v. Pergler*, 233 F.3d 1005, 1008-09 (7th Cir. 2000).

### 1. Failure to investigate or present evidence about A.P.'s medications

Mr. Karr argues that trial counsel's failure to investigate A.P.'s medical records and prescription history, and his failure to present A.P.'s text message stating she received an "IV for meds" at the emergency room, deprived him of the effective assistance of counsel.

In *Strickland*, the Supreme Court provided the following guidance for claims that trial counsel was ineffective for failing to conduct a thorough pretrial investigation:

> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Wiggins*, 539 U.S. at 521-22 (quoting *Strickland*, 466 U.S. at 690-91). In assessing counsel's investigation, courts must conduct an "objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins*, 539 U.S. at 523 (internal quotations and citations omitted).

Here, even if Mr. Karr showed that the Indiana Court of Appeals unreasonably applied *Strickland* and *Wiggins* in finding there was no deficient performance, he would still have to show that the Indiana Court of Appeals' no-prejudice finding was "contrary to, or involved an unreasonable interpretation of, clearly established Supreme Court precedent"; or that the decision "was based on an unreasonable determination of fact in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) ("*each* ground supporting the state court decision [must be] examined and found to be unreasonable.")

To establish prejudice under the *Strickland* test, Mr. Karr must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694); *see also Stickler v. Greene*, 527 U.S. 263, 289-90 (1999) (in assessing prejudice on a *Brady* claim, "[t]he question is not whether [the petitioner] would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

The Indiana Court of Appeals correctly identified this legal standard. Dkt 11-2, pp. 24-25. The court then determined "there is no evidence in this record that A.P. was given 'anesthesia' at any point." *Id.* at 27 (citing Brief of Appellant at 33, 43). This was a reasonable factual determination. There is no evidence that A.P. received "anesthesia" at the emergency room.

To be sure, A.P. did receive an injection of promethazine on the day she went to the emergency room, *see* dkt. 12-4, pp. 121-22, but promethazine is not an anesthetic. In his appellate

briefs, Mr. Karr referred only to "anesthesia" that A.P. may have received at the emergency room. *See* Brief of Appellant, pp. 14, 19, 20, 28, 29, 33, 34, 37, 43; Reply Brief, pp. 10, 12; Petition to Transfer, pp. 7, 8. He did not argue that she received promethazine or another intravenous medication. He did not even direct the court of appeals, or this Court for that matter, to A.P.'s hospital records, which showed her list of in-patient medications. The Indiana Court of Appeals was not required to sniff out facts buried in the record that may have benefited Mr. Karr's ineffective assistance of trial counsel claim, and its failure to do so does not make its factual determinations about A.P.'s medication history unreasonable. *See Felton v. Bartow*, 926 F.3d 451, 467 n. 5 (7th Cir. 2019) ("[j]udges are not like pigs, hunting for truffles buried in the record").

The court of appeals then reasonably applied the prejudice standard from *Strickland* to its reasonable factual determinations about A.P.'s medication history. The court rightly observed that A.P.'s testimony "was clear and detailed, and there was no evidence suggesting she did not remember the events in question. She was consistent with what she told [police] at the E.R. that night, and there was no evidence that she exhibited signs of impairment." Dkt. 9-5 at 27. Given these facts, the court held that Mr. Karr was not prejudiced by trial counsel's failure to investigate A.P.'s medication history or introduce into evidence her text message about receiving an "IV for meds" at the emergency room.

Mr. Karr has failed to show that the Indiana Court of Appeals' no-prejudice determination was based on an unreasonable application of existing Supreme Court precedent or an unreasonable factual determination. Accordingly, his request for relief on these grounds is **DENIED**.

### 2.  Failure to Present Forensic Cell Phone Analysis

Mr. Karr has not established that the Indiana Court of Appeals unreasonably found that he was not prejudiced when trial counsel did not admit the forensic analysis of his cell phone.

At trial, A.P. testified that before the second sexual assault, Mr. Karr "started looking up, looking, searching for a pornographic video to watch." Dkt. 12-2, p. 54. She did not testify that Mr. Karr accessed a pornographic video on his cell phone at that time. Similarly, although A.P. testified at trial that she "assumed [Mr. Karr] was taking a video" of the second sexual assault, *see id.* at 55, this was only an assumption based on the fact that Mr. Karr was shining his cell phone light on her at that time. Finally, while the forensic analysis did not confirm that Mr. Karr had accessed a pornographic video on his cell phone or taken a video around the time of the second sexual assault, the officer testified at the post-trial hearing that he could not exclude the possibility that this data had been deleted before the phone was seized by law enforcement. Dkt. 12-3, p. 141.

Once again, the Indiana Court of Appeals reasonably applied the prejudice standard from *Strickland* to its reasonable factual determinations about the forensic evidence. The court rightly observed that Mr. Karr was not prejudiced by his trial counsel's failure to present the cell phone evidence because even if "the jury was persuaded that A.P. was incorrect when she said that Karr was viewing pornography and recording her acts with his cell phone, such evidence would not necessarily undermine her account of the incidents." Dkt. 9-5 at 29. The forensic analysis of Mr. Karr's cell phone does not cast meaningful doubt on A.P.'s trial testimony. At most, the forensic analysis shows that her assumption that Mr. Karr shined his cell phone light on her to record a video was mistaken. Even then, the forensic analysis was not conclusive because it could not rule out the possibility that Mr. Karr deleted a video recording before the cell phone was seized by law enforcement.

Mr. Karr has failed to show that the Indiana Court of Appeals' no-prejudice determination was based on an unreasonable application of existing Supreme Court precedent or an unreasonable factual determination.

20

Accordingly, his request for relief on this ground is **DENIED**.

## IV.
## CERTIFICATE OF APPEALABILITY

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because jurists of reason could disagree with the Court's conclusion that the Indiana Court of Appeals did not unreasonably apply the law in concluding that Mr. Karr was not prejudiced by trial counsel's failure to present evidence of A.P.'s medications, a certificate of appealability is **granted** as to Mr. Karr's claim that trial counsel was ineffective.

## V.
## CONCLUSION

Mr. Karr's petition for a writ of habeas corpus is **denied**. A certificate of appealability on his claim for ineffective assistance of counsel, as it relates to his counsel's failure to present evidence of the victim's medications, is **granted**.

Final Judgment in accordance with this decision shall issue.

**SO ORDERED.**

Date: 7/28/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Justin F. Roebel
INDIANA ATTORNEY GENERAL
justin.roebel@atg.in.gov

Robert L. Sirianni, Jr.
BROWNSTONE, P.A.
robertsirianni@brownstonelaw.com